UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------x

IN RE DHB INDUSTRIES, INC. CLASS
ACTION LITIGATION

CV 05-4296 (JS) (ETB)

This Document Relates To:

ALL ACTIONS

---------------------------------------x

IN RE DHB INDUSTRIES, INC.
DERIVATIVE LITIGATION

This Document Relates To:         CV 05-4345 (JS) (ETB)

ALL ACTIONS

---------------------------------------x

**DEFENDANT DAVID H. BROOKS' OPPOSITION TO NON-PARTY HARBINGER'S "RESPONSE" IN OPPOSITION TO LEAD PLAINTIFFS' AND DERIVATIVE PLAINTIFF'S MOTIONS FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**TABLE OF CONTENTS**

**Page No.**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT...............................................................................................................................2

I. HARBINGER HAS NO STANDING TO BE HEARD DURING THIS, THE FIRST STEP IN THE TWO-STEP PROCESS UNDER FED. R. CIV. P. 23(e)................2

II. IN ANY EVENT, HARBINGER'S RESPONSE OR MOTION IS MERITLESS.............5

III. HARBINGER'S REQUESTS THAT THE MOU AND THE SUPPLEMENTAL AGREEMENT BE MADE PART OF THE PUBLIC RECORD ARE PARTICULARLY EGREGIOUS ........................................................................................8

CONCLUSION...........................................................................................................................10

While non-party Harbinger Capital Partners Master Fund I, Ltd. ("Harbinger") has denominated its papers as a "Response" to Plaintiffs' Motions for Preliminary Approval of the Settlement, they are not a "Response" to those Motions but, rather, a "Motion" requesting that the Court issue an order that the parties file certain Agreements with the Court "prior to any determination [by the Court] on preliminary approval." (Harbinger Memorandum ("Har. Mem.") at 9.) However, whether deemed a "Response" or a "Motion," non-party Harbinger has neither any standing to make such a request, nor any legal authority to support such a request on its merits. As such, Harbinger's Response or Motion should be denied, and the Court should go forward and decide the pending Motions for Preliminary Approval of the Settlement, without any regard to Harbinger's arguments.

## PRELIMINARY STATEMENT

Harbinger is a substantial shareholder of Defendant DHB Industries, Inc. (the "Company" or "DHB"), owning 5,368,500 of the Company's common stock. However, it is not a party to either the pending class action, or the pending derivative action, and has never sought to become a party to either of these actions.

Even more significant is the fact that it would appear that every single share of Harbinger's stock in the Company was purchased after the Company announced publicly, on July 13, 2006, that it had entered into a Memorandum of Understanding ("MOU") to settle the pending class and derivative actions and disclosed therein the basic terms of that Settlement. (See Declaration of Scott M. Tillman, submitted by Harbinger herein, and Exhibit A to the Declaration of Jerome Gotkin ("Gotkin Decl."), being submitted herewith.) We do not know why Harbinger would make such a substantial investment in the Company after learning about the Settlement, only to thereafter question and express "concerns" about whether the Settlement is fair and reasonable to the proposed class or the Company. (See Har. Mem. at 9.)

1

This is both mystifying and troubling. While we do not know what motive, ulterior or otherwise, Harbinger may have had for doing so, these facts clearly bear on the issue of its lack of standing and on the bona fides of its instant Response or Motion.

**ARGUMENT**

**I. HARBINGER HAS NO STANDING TO BE HEARD DURING THIS, THE FIRST STEP IN THE TWO-STEP PROCESS UNDER FED. R. CIV. P. 23(e)**

The Manual for Complex Litigation, Fourth Edition ("MCL"), § 21.632, discusses the two-step process for considering the fairness, reasonableness, and adequacy of a class action or derivative settlement required by Fed. R. Civ. P. 23(e). Under this process, the court must first determine whether the proposed settlement is within the range or fairness, reasonableness, and adequacy, so as to justify notifying the class members and shareholders of the proposed settlement, followed by the second step, if the first-step determination is made, of a fairness hearing "to decide whether the proposal is indeed fair, reasonable and adequate in the ultimate sense." See In re Amino Acid Lysine Antitrust Litig., MDL No. 1083, 1996 WL 197671, at *4 (N.D. Ill. Apr. 22, 1996). See also In re Nasdaq Market-Makers Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

It is during the second-step, not the first-step, that the reaction of the unnamed class members and shareholders and the existence of any opposition should be sought. See In re Amino Acid, 1996 WL 197671, at *4. As such, the first-step, which is where we are in these cases at this time, is "necessarily tentative [in] nature." Id.

Given that the first-step, the preliminary approval step, is "necessarily tentative [in] nature," a non-party, such as Harbinger, has no standing to make any motion or otherwise participate in the preliminary approval step. This is evident from the requirements necessary to establish standing, an Article III requirement which must be resolved by the Court before any person can be heard. Those requirements are:

2

> (1) that the plaintiff have suffered an "injury of act [sic]"-- an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, <u>not conjectural or hypothetical</u>; (2) that there be a causal connection between the injury and the conduct complained of -- the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as <u>opposed to merely speculative</u>, that the injury will be redressed by a favorable decision.

<u>In re Nasdaq</u>, 176 F.R.D. at 103 (emphasis added).

Applying these standards to Harbinger during this first-step, it is plain that, until the Settlement is preliminarily approved, if ever, Harbinger's "injury" or "judicially cognizable interest" is "conjectural or hypothetical" and "merely speculative," because the Court could, for example, deny the pending Motions for Preliminary Approval. Similarly, if the Court grants the pending Motions and preliminarily approves the Settlement, but Harbinger subsequently opts-out (as may be likely, given the fact that it made its stock purchases after learning about the Settlement and is now questioning the propriety of the Settlement), it likewise will not have any standing. "Standing exists only where the non-settling defendant [or the opt-out class member] can show that it will 'sustain some formal legal prejudice as a result of the settlement'" which Harbinger cannot show now and will not be able to show if it opts-out. <u>Id.</u>[1]

Not surprisingly, Harbinger does not cite to a single case or authority supporting its <u>ipse</u> <u>dixit</u> that "because Harbinger is both a current shareholder of the Company, and a member of

---

[1] The <u>NASDAQ</u> case, like the instant case, involved the issue of standing during the first-step of preliminary approval. In that case, certain non-settling defendants, even though they were, as distinguished from Harbinger here, parties to the action, were held not to have standing to be heard during the preliminary approval step because, as non-settling defendants, they were "not affected by that settlement." <u>Id.</u> Similarly here, Harbinger will not be affected, unless and until the Court preliminarily approves the instant Settlement and Harbinger elects not to opt-out. After holding that the non-settling defendants had no standing, the court in <u>NASDAQ</u> proceeded to grant preliminary approval, without considering any of the arguments of the non-settling defendants, as this Court should do here regarding Harbinger's arguments.

the settlement class," it has standing to be heard at this time. The one case Harbinger does cite, Rosenbaum v. MacAllister, 64 F.3d 1439 (10th Cir. 1995), is entirely inapposite. The issue in Rosenbaum was whether an unnamed class member who was a "shareholder at the time of the acts [complained of] and at all times thereafter" had standing to appeal the district court's fee award to plaintiffs' counsel. The appeal was filed after the district court certified a class that included the appellant; after the appellant failed to opt-out of the class; and after the district court finally approved a settlement that encompassed the appellant's potential claims, thereby adjudicating those claims. In holding that the appellant had standing to appeal the fee award in this context, the Tenth Circuit said nothing at all about his standing or lack of standing at the preliminary approval step. Moreover, the Tenth Circuit noted that at the second or fairness hearing step appellant had appeared by counsel and filed a written objection to the proposed award of attorney's fees, that he was not appealing the approval of the settlement itself, and that he had never questioned the validity of the settlement agreement itself. The Rosenbaum case, therefore, is far off the mark as far as the question of Harbinger's present standing is concerned [2]

   Lastly, on the issue of standing, we note first that Magistrate Judge Boyle, on two occasions, at a Court conference on December 13, 2006, and at oral argument on the pending Motion to Intervene on December 20, 2006, made clear to Harbinger's counsel that Harbinger is not a party herein and, therefore, has no standing herein and cannot participate in these cases, except as the Court may hereinafter order. Significantly, neither of these two admonitions of Magistrate Judge

---

[2] Another case cited by Harbinger, this one for its dictum that there is a risk that final approval of a settlement will be "due to the momentum generated by a preliminary approval based on inadequate evidence," Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago, 834 F. 2d 677, 685 (7th Cir. 1987), did not involve any issue of standing. Moreover, as to the issue of what should or should not be filed for purposes of preliminary approval, the court in Mars Steel held that "there is no ironclad requirement of [a brief evidentiary] hearing [before giving preliminary approval]" and proceeded to affirm the district court's ultimate final approval of the settlement, without there having been any evidentiary hearing at the preliminary approval step.

4

Boyle is referred to anywhere in Harbinger's papers. Second, the various authorities cited by Harbinger that class members have standing to object to a class action settlement and that shareholders have such standing with regard to a derivative action settlement are, of course, correct. The issue, though, is that they have to do so at the <u>appropriate</u> time and in the <u>appropriate</u> manner, which means, <u>if</u> the Court grants the pending Motions for Preliminary Approval and issues the Preliminary Approval Orders Plaintiffs have requested, by filing with the Court and serving on all counsel written objections, on or before the date fixed by the Court in those Orders, and <u>not</u> before, or in any other manner. (<u>See</u> ¶ 13 of Ex. B and ¶ 10 of Ex. C to the Stipulation and Agreement of Settlement herein, dated as of November 30, 2006 (the "<u>Stipulation</u>") (D.I. 161 (Class Action); D.I. 102 (Derivative Action)), for the form of Orders requested.)[3]

## II. IN ANY EVENT, HARBINGER'S RESPONSE OR MOTION IS MERITLESS

Fed R. Civ. P. 23 (e)(2) requires that "the parties seeking approval of a settlement . . . under Rule 23(e)(1) must file a statement <u>identifying</u> any agreement made in connection with the proposed settlement . . . ." (emphasis added). The parties here have done so, although not in the form of a formal "statement." Indeed, in the interest of full disclosure, the parties here have identified many more agreements than the ones Harbinger seeks to have filed with the Court.

Thus, on page 1 of the Stipulation, in the introductory paragraph, the parties identify and describe the MOU. The MOU is also identified and described in the Company's filing with the SEC on July 13, 2006 (Ex. A to the Gotkin Decl.) and in the Company's filing with the SEC on

---

[3] Harbinger's statement at page 6 of their Memorandum that the MCL "recognized" in § 21.632 that "at the preliminary fairness review," it is "often prudent to hear not only from counsel, but also . . . from attorneys who represent individual class members but did not participate in the settlement negotiations," is not what the MCL appears to be saying in § 21.632. The sentence quoted in part by Harbinger does not appear to be referring to "the preliminary fairness review," but rather, if read in context with the preceding sentence in the MCL text, to the "final fairness hearing."

5

August 3, 2006 (Ex. B to the Declaration of David M. Marcus ("Marcus Decl."), submitted by Harbinger herein).

On page 7 of the Stipulation, in ¶ 1.19, "DHB's obligations to David H. Brooks and to all of the other Defendants to whom DHB has indemnification obligations . . . as provided for in DHB's Articles of Incorporation and By-Laws, in the laws of Delaware, and in this Stipulation," and the undertakings of David H. Brooks and such other Defendants in connection therewith are identified and described.

On page 9 of the Stipulation, in ¶ 1.27, "a release by DHB of David H. Brooks and Dawn M. Schlegel, and each of them from any and all liability under §304 of the Sarbanes-Oxley Act of 2002" is identified and described, and in ¶ 4.7, on page 27, the agreement of the Company to indemnify Brooks and Schlegel against any such liability is identified and described.

On page 23 of the Stipulation, in ¶ 2.14, the resignation of David H. Brooks "from the Board of Directors of DHB and from all of the other positions held by him in DHB and its subsidiaries" is identified and described.

On page 24 of the Stipulation, in ¶ 2.15, the agreement that Board members Cary Chasin, Gary Nadelman, and Barry Berkman "shall be replaced as Board members within one year" after the Effective Date of the Settlement, is identified and described.

Also on page 24 of the Stipulation, in ¶ 2.16, the agreement that "[u]pon cessation of employment with DHB and/or service on its Board of Directors, and for a period of time of 5 years thereafter, David H. Brooks, Dawn M. Schlegel, Sandra Hatfield, Cary Chasin, Jerome Krantz, Gary Nadelman and Barry Berkman will not be employed (directly or indirectly) by DHB or any of its subsidiaries or affiliates (but not including Tactical Armor Products, Inc., if the same may be deemed to be such an affiliate), including, but not limited to, serving as any manner of consultant or

6

in any capacity on or in service to the Board of Directors," and that "[t]his same restriction on employment shall apply to Terry Brooks and Jeffrey Brooks, commencing as of the Effective Date," is identified and described.

On page 27 of the Stipulation, in ¶ 4.6, other agreements entered into in connection with the Settlement are identified. While these other agreements are not described there, they are described in detail in the Company's public disclosures in its Form 8-K filing with the SEC on August 3, 2006 (Exhibit B to the Marcus Decl.) as follows:

> In order to complete the transactions contemplated in the MOU, on July 31, 2006, the Company entered into the following agreements with Mr. Brooks: (i) a Release Agreement and Contractual Undertakings (the "Release Agreement"), (ii) a Securities Purchase Agreement (the "Securities Purchase Agreement"), (iii) a Registration Rights Agreement (the "Registration Rights Agreement") and (iv) a Warrant Exercise Agreement (the "Warrant Exercise Agreement").

There then follows in this same Form 8-K filing a further and more detailed description of each of these four Agreements.

Also in the Company's public disclosures of August 3, 2006 (Exhibit B to the Marcus Decl.) the agreement between the Company and the Company's directors' and officers' liability insurers to fund the cash portion of the Settlement in the amount of $12,875,000, "pursuant to buyouts of the policies," is identified and described.

And, finally, on page 35 of the Stipulation, in ¶ 7.3, the Supplemental Agreement of the Settling Parties is identified and described.

In sum, each and every agreement Harbinger is requesting the Court to order the Parties to file in the public record, and then some, per the requirements of Fed. R. Civ. P. 23(e)(2), are identified in the Stipulation and in the Company's public disclosures of July 13, 2006 and August 3, 2006. They are not only identified there, they are also described there. We respectfully submit that this should be more than sufficient under Fed. R. Civ. P. 23(e)(2). As stated in the

Advisory Committee Notes to Rule 23, regarding the 2003 Amendments, "[f]urther inquiry into the agreements identified by the parties should not become the occasion for discovery by the parties or objectors." Yet, that would appear to be exactly what Harbinger wants to do.

These Advisory Notes also state that the court, in the exercise of its discretion, "may direct the parties to provide to the court or other parties a summary or copy of the full terms of any agreement identified by the parties." It should be noted, however, that there is no reference to making any such agreement available to any non-party, such as Harbinger, or to making any such agreement part of the public record, as Harbinger is also requesting. (See Har. Mem. at 7.) Indeed, there is a further provision in these Advisory Committee Notes that any such "direction" of the court "may raise concerns of confidentiality," another pertinent observation that Harbinger in its Response or Motion entirely eschews. See, in particular, regarding this matter of confidentiality, the further discussion below regarding the Supplemental Agreement.

In a word, Harbinger's Response or Motion is meritless.[4]

### III. HARBINGER'S REQUESTS THAT THE MOU AND THE SUPPLEMENTAL AGREEMENT BE MADE PART OF THE PUBLIC RECORD ARE PARTICULARLY EGREGIOUS

Apart from the fact that the MOU and the Supplemental Agreement are more than sufficiently identified and described, there are yet additional reasons why Harbinger's requests for these two agreements are entirely uncalled-for, all of which additional reasons were and are well known to Harbinger.

MOU - On December 20, 2006, in open court, with Harbinger's counsel in attendance, albeit behind the rail due to Magistrate Judge Boyle's ruling that their client and,

---

[4] If the Court nevertheless wishes to see one or more of these agreements, Defendant Brooks would be pleased to submit them to the Court (upon concurrence of all other signatories), but requests that he be permitted to do so *in camera*.

therefore, they had no standing herein, Magistrate Judge Boyle ruled that the MOU, because the Stipulation had already been entered into, was irrelevant and did not have to be produced or filed in Court. Moreover, ¶ 8.8 of the Stipulation, in full support of the Magistrate Judge's ruling, provides in unequivocal language that

> This Stipulation supersedes and replaces any prior or contemporaneous writing, statement or understanding, including, without limitation, the Memorandum of Understanding pertaining to the Actions.

Stipulation ¶ 8.8. For Harbinger and its counsel to nevertheless continue to press for the filing of the MOU is, therefore, egregious and perhaps also sanctionable.[5]

Supplemental Agreement - Harbinger's request that the Supplemental Agreement be filed with the Court, thereby putting it in the public record, is also completely unfounded and improper. Supplemental Agreements, as does the one herein, contain the trigger number of opt-out shares that might upset a settlement, and they are never -- for obvious reasons -- filed in the public record, even after Preliminary Approval. And we would have assumed that Harbinger and its counsel were well aware of that. Indeed, §21.631 of the MCL, which is one of the provisions of the MCL specifically relied upon by Harbinger in its Memorandum (see Har. Mem. at 8), provides:

> Opt-out agreements, in which a defendant conditions its agreement on a limit on the number or value of opt outs, may warrant confidential treatment. Knowledge of the specific number of opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out. A common practice is to receive information about such agreements *in camera*.

---

[5] To make matters worse, Harbinger asserts that the "MOU is referenced throughout [the Stipulation] – and, indeed expressly incorporated in -- the Settlement." (Har. Mem. at 5.) In fact, the only incorporation of any part of the MOU referred to in the Stipulation is in the Corporate Governance Principles and Policies to be adopted by the Company, where it is stated that "Paragraph 18 of the Memorandum of Understanding is incorporated herein," i.e., in those Corporate Governance Principles and Policies and not in the Stipulation, as such. (See Stipulation at 21.) That single incorporation of one paragraph of the MOU in those Principles and Policies is hardly "expressly incorporat[ing]" the entire MOU in "the Settlement," as Harbinger asserts.

9

## CONCLUSION

By reason of the foregoing, Harbinger's Response or Motion, however it may be characterized, should be denied.

Dated: January 10, 2007                                   Respectfully submitted,

| | |
|---|---|
| MILBANK, TWEED, HADLEY<br>     & McCLOY LLP<br>GEORGE S. CANELLOS (GC-8092)<br>C. NEIL GRAY (CG-9038) | MINTZ LEVIN COHN FERRIS<br>     GLOVSKY AND POPEO, P.C.<br>R. ROBERT POPEO (admitted *pro hac vice*)<br>JOHN F. SYLVIA (JG-2637) |
|       /s/ C. Neil Gray<br>C. NEIL GRAY |       /s/ R. Robert Popeo (with permission)<br>R. ROBERT POPEO |
| One Chase Manhattan Plaza<br>New York, NY 10005-1413<br>Telephone: 212/530-5000<br>212/530-5219 (fax) | One Financial Center<br>Boston, MA 02111<br>Telephone: 617/542-6000<br>617/542-2241 (fax) |
| | -and- |
| | MINTZ LEVIN COHN FERRIS<br>     GLOVSKY AND POPEO, P.C.<br>JEROME GOTKIN (JG-2637) |
| |       /s/ Jerome Gotkin (with permission)<br>JEROME GOTKIN |
| | 666 Third Avenue<br>New York, NY 10017-4011<br>Telephone: 212/935-3000<br>212/983-3115 (fax) |

Attorneys for Defendant David H. Brooks

# CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2007, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

## Class Action:

**Mario Alba , Jr**
malba@lerachlaw.com,drosenfeld@lerachlaw.com,e_file_ny@lerachlaw.com

**William E Bernarduci**
wbernarduci@snlaw.net

**Aaron L. Brody**
ssbny@aol.com

**George S. Canellos**
gcanellos@milbank.com,cngray@milbank.com

**Celia Cohen**
celia.cohen@kobrekim.com

**Mary K Dulka**
mary.dulka@cliffordchance.com

**Mary Gail Gearns**
marygail.gearns@bingham.com

**Jerome Gotkin**
jgotkin@mintz.com

**Lynda J. Grant**
lgrant@labaton.com,ElectronicCaseFiling@glrslaw.com

**Christopher Neil Gray**
cngray@milbank.com

**Mark Holland**
mark.holland@cliffordchance.com

**Nancy Kaboolian**
nkaboolian@abbeyspanier.com

**David Paul Kasakove**
dpkasakove@bryancave.com

**Christopher Joseph Keller**
ckeller@labaton.com

**Steven Gary Kobre**
steven.kobre@kobrekim.com

**Kim Elaine Miller**
kimmiller225@yahoo.com,kim.miller@kglg.com

**Jeffrey M Norton**
jmn@whesq.com,tsawchuk@whesq.com

**Keith Park**
keithp@lerachlaw.com

**Robert Popeo**
rrpopeo@mintz.com

**Roland G. Riopelle**
rriopelle@sercarzandriopelle.com,rriopelle@juno.com

**Howard M. Rogatnick**
hmrogatnick@bryancave.com,dortiz@bryancave.com

**Samuel H. Rudman**
srudman@cauleygeller.com

**Peter E. Seidman**
pseidman@milbergweiss.com

**Adam L. Sisitsky**
asisitsky@mintz.com

| | |
|---|---|
| **Joel B. Strauss**<br>jstrauss@kaplanfox.com | **Catherine A. Torell**<br>ctorell@cmht.com,lawinfo@cmht.com |
| **John F. Sylvia**<br>jsylvia@mintz.com | **Nicole M. Zeiss**<br>nzeiss@labaton.com,ElectronicCaseFiling@glrslaw.com |

**Derivative Action:**

| | |
|---|---|
| **Thomas G. Amon**<br>tamon@amonlaw.com | **Phillip C. Kim**<br>pkim@law.nyc.gov |
| **Richard B. Brualdi**<br>rbrualdi@brualdilawfirm.com | **Robert Popeo**<br>rrpopeo@mintz.com |
| **George S. Canellos**<br>gcanellos@milbank.com,cngray@milbank.com | **Roland G. Riopelle**<br>rriopelle@sercarzandriopelle.com,rriopelle@juno.com |
| **Mary K Dulka**<br>mary.dulka@cliffordchance.com | **Brian Robbins**<br>brobbins@ruflaw.com,dmaytorena@ruflaw.com,sputtick@ruflaw.com,kzimmer@ruflaw.com |
| **Jeffrey Fink**<br>jfink@ruflaw.com | |
| **Jerome Gotkin**<br>jgotkin@mintz.com | **Adam L. Sisitsky**<br>asisitsky@mintz.com |
| **Christopher Neil Gray**<br>cngray@milbank.com | **John F. Sylvia**<br>jsylvia@mintz.com |
| **Mark Holland**<br>mark.holland@cliffordchance.com | **Catherine A. Torell**<br>ctorell@cmht.com,lawinfo@cmht.com |
| **David Paul Kasakove**<br>dpkasakove@bryancave.com | **Steven Wedeking**<br>swedeking@ruflaw.com |
| **Michael S Kim**<br>michael.kim@kobrekim.com | **Harry H. Wise , III**<br>hwiselaw@aol.com |

                                                /s/ C. Neil Gray
C. Neil Gray
MILBANK, TWEED, HADLEY & McCLOY LLP
One Chase Manhattan Plaza
New York, New York 10005-1413