IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE : DHB INDUSTRIES, INC. CLASS ACTION LITIGATION AND DHB INDUSTRIES, INC. DERIVATIVE LITIGATION | ) ) ) ) ) ) ) ) No. CV-05-4296 (JS) & CV-05-4345 (JS) ) ) ) ) |

### THE UNITED STATES' OBJECTIONS TO THE PROPOSED SETTLEMENT

Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1711 *et seq.*, and 28 U.S.C. § 517, the United States objects to certain aspects of the proposed settlement in this consolidated matter. Although the United States is not a party to this action, the proposed settlement could potentially adversely impact the interests of the United States in two proceedings pending against certain of the defendants in this action. First, the proposed settlement could affect the government's remedies in the criminal matters pending against several of DHB's former officers. Second, the proposed settlement would appear to undermine the Securities and Exchange Commission's (SEC) pending action against one of these former officers for violations of section 304 of the Sarbanes-Oxley Act (SOX). For these reasons, the United States asks that the Court reject the proposed settlement unless it is revised to address these concerns.

    A.    <u>The Proposed Settlement Does Not Protect The Government's Potential Criminal Remedies</u>

In August 2006, the U.S. Attorney's Office for the Eastern District of New York indicted former DHB Chief Financial Officer Dawn Schlegel and former Chief Operating Officer Sandra

Hatfield on charges that they inflated corporate earnings and profit margins, and then profited on those inflated earnings through the sale of DHB stock. On October 25, 2007, the U.S. Attorney's Office indicted former Chief Executive Officer David Brooks on similar charges.

The United States is concerned that the proposed settlement may interfere with the United States' remedies in these criminal matters. In particular, the United States is concerned that the defendants may try to use the proposed settlement to avoid their obligation, if convicted, to make full restitution pursuant to 18 U.S.C. § 3663A; *see also United States v. Hamburger*, 414 F. Supp. 2d 219, 226-27 (E.D.N.Y. 2006). The proposed settlement requires the class to release "any and all claims arising from both the purchase or sale of DHB common stock . . . and any and all acts, facts, statements, claims, or omissions that were or could have been alleged by the Lead Plaintiffs in the Class Action." While defense counsel have represented to the Court that this settlement has no possible effect on any government action concerning DHB and other Defendants, *see DHB's Memorandum of Law In Support of Final Approval of Settlement*, Docket #297 ("In fact, as the Court is well aware, the Settlement does not, and cannot, release any claims that the U.S. Attorney or the Securities and Exchange Commission might bring"), there is no provision in the settlement agreement effectuating this statement or protecting the Government's remedies in the criminal proceedings. Accordingly, consistent with the defendants' stated intent, the Government seeks the addition of a specific provision to the proposed settlement agreement providing that "nothing contained in this Settlement is intended to limit the United States' ability to pursue forfeiture, restitution or fines in any criminal, civil or administrative proceeding."

B.  The Proposed Settlement Impedes the Government's Ability to Effectuate Section 304 of the Sarbanes-Oxley Act

The Government also objects to the proposed settlement on the grounds that it will undermine pending and potential actions brought by the SEC against Brooks and Schlegel under section 304 of SOX.[1] Section 304 of SOX provides that, where a company is required to issue a revised financial statement, the company's CEO and CFO must reimburse the company for any bonuses or profits on transactions in the company's stock received by these officers during the 12-month period following the filing of the incorrect financial statement.[2] Under this provision, the SEC's claims against Brooks and Schlegel only became ripe after DHB materially restated its

---

[1] The SEC has two separate lawsuits concerning this matter; one recently filed against Brooks, and one filed against Schlegel and Hatfield in 2006. Only the lawsuit against Brooks currently includes a claim under section 304 of SOX. However, as stated above, the section 304 claim only became ripe as of October 1, 2007, when DHB filed an amended 10-K with the SEC, and the lawsuit against Schlegel and Hatfield has been stayed pending the conclusion of the criminal proceedings.

[2] Forfeiture Of Certain Bonuses And Profits
(a) ADDITIONAL COMPENSATION PRIOR TO NONCOMPLIANCE WITH COMMISSION FINANCIAL REPORTING REQUIREMENTS -
> If an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for --
> (1) any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12-month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and
> (2) any profits realized from the sale of any securities of the issuer during that 12-month period.
(b) COMMISSION EXEMPTION AUTHORITY -
> The Commission may exempt any person from the application of subsection (a), as it deems necessary and appropriate.

3

financial filings with the SEC, which it did on October 1, 2007. Following that restatement, the SEC brought the pending action against Brooks.

The Government is concerned that the proposed settlement will undermine the SEC's pending or potential actions against Brooks and Schlegel by requiring DHB to release and indemnify them in the event they are found liable under section 304 of SOX. The proposed settlement provides that:

> The Stipulation of Settlement, as it concerns the Derivative Action, will contain both . . . (b) a release from DHB to David H. Brooks and Dawn M. Schlegel releasing them and each of them from any liability under Section 304 of the Sarbanes-Oxley Act of 2002 to reimburse DHB for any bonus or other incentive-based or equity based compensation received by them or either of them, or for any profits realized by them or either of them from the sale of any securities of DHB. The Stipulation of Settlement, as it concerns the Derivative Action, will also contain an agreement by DHB to indemnify defendants David H. Brooks and Dawn M. Schlegel, and each of them, against any liability under Section 304 incurred by them, or either of them, in any action brought by a third party under Section 304, and to pay them, and each of them, an amount equal to any payment made by them, or either of them, to DHB pursuant to any judgment in any such action.

Memorandum of Understanding, p. 3.

The Government submits that this release and indemnification provision is contrary to the public policy embodied in section 304. In similar circumstances, courts have found such provisions to be void on public policy grounds. *See Credit Suisse First Boston, LLC v. Intershop Communications AG*, 407 F. Supp. 2d 541, 546 (S.D.N.Y. 2006) ("Indemnification for liability under the securities law is disfavored by the courts. Given the risk that indemnification agreements will undermine the strong public policy underlying the anti-fraud provisions of the 1933 and 1934 Acts, courts are reticent to enforce them."); *Globus v. Law Research Service, Inc.*,

418 F. 2d 1276 (2d Cir. 1969). As the court in *Credit Suisse* explained, "[T]he overriding purpose of Congress in enacting Section 11 was not so much to impose liability for the benefit of investors injured by a defective registration statement but rather to stimulate diligence on the part of those persons who are actually responsible for the preparation of registration statements." Similar reasoning applies here. Congress adopted section 304 of SOX to stimulate diligence on the part of CEOs and CFOs by making them personally responsible for misconduct that results in material noncompliance with financial reporting requirements. Thus, to allow the proposed settlement to release and indemnify Brooks and Schlegel for their role in the erroneous financial statements filed by DHB would undermine the very purpose behind Congress' enactment of section 304. The Government therefore objects to the proposed release and indemnification provision, and asks the Court not to approve the proposed settlement unless this provision is removed.[3]

C. The Proposed Settlement Warrants Scrutiny in Other Respects

In addition to the specific objections noted above, the United States notes that there are several other aspects of the proposed settlement that may warrant specific attention from this Court in assessing the proposed settlement. The United States takes no position, however, on whether these aspects of the proposed settlement should preclude a finding that the proposed settlement is fair, adequate and reasonable.

First, as has been noted by other objectors, the majority of the Defendants in these actions are not paying any consideration towards the settlement, but are nonetheless receiving broad

---

[3] The fact that Schlegel is providing no consideration whatsoever under either the Class Action settlement or the Derivative Action settlement makes this provision as regards to her particularly offensive to public policy.

5

releases. These defendants include former CFO Schlegel and former COO Hatfield, both of whom are defendants in the criminal proceedings referenced above, and who are alleged to have earned more than $8.2 million on illegal insider trading, in addition to their salaries from DHB. These defendants also include Defendant Krantz, a former director of DHB, who earned more than $2.2 million on sales of his shares; Defendant Nadelman, a former director of DHB, who earned more than $2 million on sales of his shares; Defendant Chasin, a former director of DHB, who earned more than $2 million on sales of his shares; and Defendant Berkman, a former director of DHB, who earned more than $864,000 on sales of his shares. All of these sales occurred during the final months of 2004, before material information adversely affecting DHB's financial condition became public.

Second, the proposed settlement provides that $34.9 million in cash, plus approximately 3.2 million shares of DHB common stock, will be distributed to class members. This cash amount will be made up of $12,875,000 paid by DHB's insurers and $22,325,000 paid by Brooks. Brooks made this cash available to the company, and by extension to the settling class members, by purchasing from DHB three million existing DHB stock warrants for DHB common stock at an elevated exercise price of $2.50 per share, and participated in a PIPE[4] transaction at $4.93 per share of 3,007,099 shares of DHB common stock.[5] After these stock purchases,

---

[4] PIPE is an acronym for "Private Investment/Public Equity." In a PIPE transaction, a public company sells equity or equity-linked securities to a limited group of investors in a private transaction, and then immediately registers the shares for resale into the public markets by those investors.

[5] This price was significantly above the market value of DHB stock at the time the transaction was completed. According to court filings by DHB, the stock price on July 31, 2006 was "between $2.65 and $2.90 per share."

6

Brooks owns 28% of DHB's stock.

Since that deal was negotiated, however, the price of DHB's shares has greatly risen, to the point that another company, Steel Partners L.L.P., has offered to pay $5.50 per share for all outstanding shares of DHB's stock. If the 6 million shares of stock that Brooks purchased in connection with the proposed settlement are sold at $5.50, he will apparently earn a profit of approximately $10 million on those shares, thus reducing his out-of-pocket contribution to the settlement to just over $12 million. The criminal indictment filed by the U.S. Attorney's Office against Brooks alleges that Brooks made more than $185 million in illegal insider trading. The Court may therefore want to assess whether Brooks' contribution to the proposed settlement is appropriate. *See In re Traffic Executive Ass'n-Eastern Railroads*, 627 F.2d 631, 633 (2d Cir. 1980) (approving a district court order disapproving a proposed class action settlement based on the amount the class would receive as compared to the possible recovery).

## CONCLUSION

For the foregoing reasons, the United States objects to this proposed settlement to the extent that it may adversely impact the government's pending proceedings against certain of the defendants in this action, and asks the Court to reject the proposed settlement unless it is revised to address these issues.

                                        Respectfully submitted,

                                        PETER D. KEISLER
                                        ASSISTANT ATTORNEY GENERAL

By: _____
MICHAEL D. GRANSTON
JENNIFER CHORPENING
Attorneys
Jennifer.Chorpening@usdoj.gov
U.S. Department of Justice
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 514-8112
Fax: (202) 514-0280

Dated: November 19, 2007