UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re DHB INDUSTRIES, INC. CLASS ACTION LITIGATION<br><br>This Document Relates To:<br><br>    ALL ACTIONS. | Civil Action No.<br>2:05-cv-4296-JS-ETB |
| In re DHB INDUSTRIES, INC. DERIVATIVE LITIGATION<br><br>This Document Relates To:<br><br>    ALL ACTIONS. | Civil Action No<br>2:05-cv-4345-JS-ETB |

**MEMORANDUM OF DEFENDANT DAVID H. BROOKS IN OPPOSITION
TO MOTION AND OBJECTIONS OF THE UNITED STATES**

Defendant David H. Brooks ("Mr. Brooks") relies on, and incorporates by reference, the memoranda submitted by the Plaintiffs, Defendant Point Blank Solutions, Inc. (formerly known as DHB Industries, Inc.) (the "Company"), and the other Defendants, in opposition to the United States' Motion and Objections. Accordingly, Mr. Brooks will address here only the government's objection to the Sarbanes-Oxley ("SOX") Section 304 indemnity contained in the Settlement Agreement and the government's lack of standing under the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005) ("CAFA"), to object to this aspect of the settlement.

**The United States Has No Standing Under CAFA**

Significantly, the United States does not argue that the SOX Section 304 indemnity adversely affects the members of the Class, who are neither obligors nor beneficiaries of the indemnity. The only party it affects is the Company. Yet CAFA, which is claimed to provide the authority for the government's objection, was enacted to protect class members—not

- 1 -

companies—against inappropriate settlements of class actions. Thus, it cannot be said that the United States is acting pursuant to CAFA here.

This conclusion is underscored by the only case cited by the government in support of its standing to object—Figueroa v. Sharper Image Corp., No. 05-21251-CIV, 2007 WL 2979785 (S.D. Fla. Oct. 11, 2007). In Figueroa, the Attorneys General of a large number of states objected to a "coupon settlement," principally on the ground that it did "not provide meaningful compensation to class members," the very abuse that CAFA was designed to address. Id. at *7. No such claim is being made here by the government. Indeed, as the parties have previously demonstrated to the Court, and the government does not dispute, the Settlement provides very substantial compensation to the class members.

Notably, only a handful of the many thousands of class members objected to the Settlement, and not a single institutional shareholder did so. Almost all of the class members/shareholders—including all of those with the most at stake—want the Settlement approved. The stock market wants it approved, as evidenced by the increase in the Company's stock price since the Settlement was announced. The Company, the only party affected by the SOX Section 304 indemnity, wants it approved. And even others, such as Steel Partners, L.L.P., which made an offer on October 30, 2007 to buy all of the Company's shares for at least $5.50 per share, want it approved.[1]

---

[1] The Court should reject the government's suggestion on page seven of its Objections that the Court assess whether Mr. Brooks' contribution to the Settlement is appropriate in light of the Steel Partners offer. It is simply unfair to Mr. Brooks and the other parties to the Settlement to engage in such hindsight. The Settlement is the result of protracted negotiations between sophisticated parties represented by skilled counsel, and all parties entered into the Settlement fully aware that the value of the Company's stock could go up or down following the execution of the Settlement. The case cited by the government in support of its argument, In re Traffic Executive Ass'n-Eastern Railroads, 627 F.2d 631

In a word, the Settlement is a good one for the persons CAFA was designed to protect.

### In Any Event, The Government's Objection Should Be Rejected On Its Merits

The government claims on page one of its Objections that the SOX Section 304 indemnity "would appear to," *i.e.*, it does not claim that it would, undermine the Securities and Exchange Commission's ("SEC") pending action against Mr. Brooks.[2]  The SEC action, which closely parallels the criminal indictment, contains a number of counts and seeks a variety of remedies, including disgorgement and civil penalties.  One of the counts, alleging claims under SOX Section 304, could result in an order directing Mr. Brooks to "reimburse" the Company for certain bonuses, equity-based compensation, and profits from the sales of Company securities.  Under the criminal forfeiture count of the indictment, the U.S. Attorney's Office separately seeks the forfeiture of almost all of these same amounts to the government on the ground that they are proceeds of violations of the criminal law.  In other counts of the SEC action, the SEC also seeks civil disgorgement of most of the same money to the government.

If the SEC's action against Mr. Brooks is ultimately successful, and if, as a result, Mr. Brooks is required to reimburse the Company under SOX Section 304, and if Mr. Brooks then has sufficient funds to do so, then Mr. Brooks will have to pay the same to the Company.  It is only at that point that the terms of the Settlement would require the Company to pay back to

---

(2d Cir. 1980), is entirely off the point.  In that case, a proposed settlement was disapproved because it was "only approximately 3 percent of the potential recovery," id. at 633-34, not approximately 30-40% of possible damages, and potentially higher, as in the instant Settlement.

[2]   The SEC is not a party to the United States' Motion and Objections and has not made a motion of its own.

Mr. Brooks an amount equal to the SOX Section 304 reimbursement, thereby protecting and effectuating the Settlement. Thus, the SEC's action against Mr. Brooks can and presumably will go on, and that action will not be undermined by the SOX Section 304 indemnity.

The SOX Section 304 indemnity was simply one of the negotiated terms of the Settlement, and one which Mr. Brooks insisted on as further consideration for his funding the Settlement itself. Most importantly, the Company, which is the only party affected by the SOX Section 304 indemnity, agreed to the indemnity and continues to support the Settlement <u>as written</u>. As Company counsel advised the Court at the October 5, 2007 hearing, the Settlement is vital to the well-being and continued survival of the Company, and they urged the Court then—and continue to urge the Court now—to approve the Settlement.

## **The United States' Public Policy Argument Is Inapposite**

The government argues that the SOX Section 304 indemnity "is contrary to public policy." But the cases on which the United States relies do not support its argument. In <u>Credit Suisse First Boston, LLC v. Intershop Commc'ns AG</u>, 407 F. Supp. 2d 541 (S.D.N.Y. 2006), the Court held that an indemnification of an underwriter provided for in an indemnity agreement was <u>not</u> unenforceable on the grounds of public policy, and that the issuer's claim that the underwriter disseminated false financial information about the issuer did <u>not</u> preclude the underwriter's claim of indemnification against the issuer. In so holding, while the Court did say that "[i]ndemnification for liability under the securities laws is disfavored by the courts," it added that is only the case when indemnification "will undermine the strong public policy underlying the anti-fraud provisions of the 1933 and 1934 Acts," that is, when it would permit "the exploitation of the investor," or would induce an underwriter not to be diligent. <u>Id</u>. at 546.

In other words, indemnifications that might be against public policy are those that purport to hold a party harmless against future violations of the securities laws, thereby eliminating the deterrent effect of the law and encouraging future violations. In contrast, indemnifications like the instant one, that are entered into <u>after</u> the alleged violations have occurred, in order to effectuate a settlement of claims against defendants for those very violations, do not raise such concerns. Such an after-the-fact indemnification—like the after-the-fact releases for alleged prior violations contained in almost every settlement—in no way encourages future violations of the law or otherwise violates public policy.

The only other case cited by the United States, <u>Globus v. Law Research Serv., Inc.</u>, 418 F.2d 1276 (2d Cir. 1969), fully supports this distinction. In <u>Globus</u>, the Second Circuit found "particularly suspect" only those indemnifications of underwriters by issuers whereby the "'*in terrorem* effect' of civil liability might well be thwarted" by the underwriters being "free to pass their liability on to the issuer." <u>Id</u>. at 1288. Here, though, since we are dealing with an indemnity agreement entered into <u>after the fact</u>, there is no "*in terrorem* effect" that can be or will be thwarted.

In sum, the indemnification in the instant case is not an inducement or license to violate the securities laws, or to be less than diligent in observing them. Rather, it is merely a business term, entered into by sophisticated businessmen, represented by skilled and experienced counsel, after full disclosure and extensive negotiations.

## **CONCLUSION**

By reason of the foregoing, Mr. Brooks respectfully requests that the Motion of the United States be denied, but if granted, that the government's objection to the SOX Section 304 indemnity provision in the Settlement be rejected and the Settlement be approved.

Dated: November 27, 2007

Respectfully submitted,

MINTZ LEVIN COHN FERRIS
    GLOVSKY AND POPEO, P.C.
R. ROBERT POPEO
JOHN F. SYLVIA

/s/ R. Robert Popeo (with permission)
R. ROBERT POPEO

One Financial Center
Boston, MA 02111
Telephone: 617/542-6000
617/542-2241 (fax)

MINTZ LEVIN COHN FERRIS
    GLOVSKY AND POPEO, P.C.
JEROME GOTKIN

/s/ Jerome Gotkin (with permission)
JEROME GOTKIN

666 Third Avenue
New York, NY 10017-4011
Telephone: 212/935-3000
212/983-3115 (fax)

MILBANK, TWEED, HADLEY
    & McCLOY LLP
GEORGE S. CANELLOS
C. NEIL GRAY
DANIEL M. PERRY
ROBERT C. HORA

/s/ C. Neil Gray
C. NEIL GRAY

One Chase Manhattan Plaza
New York, NY 10005-1413
Telephone: 212/530-5000
212/530-5219 (fax)

Attorneys for Defendant David H. Brooks

4195242v.1